476 July 2, 2025 No. 575

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

MAXIMO RODOLFO COVERNALI,
*Defendant-Appellant.*

Lane County Circuit Court
22CR50153; A180832

Kamala H. Shugar, Judge.

Argued and submitted November 20, 2024.

Brett J. Allin, Deputy Public Defender, argued the cause for appellant. Also on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Michael A. Casper, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Aoyagi, Presiding Judge, Egan, Judge, and Joyce, Judge.

EGAN, J.

Reversed and remanded.

**EGAN, J.**

In this criminal appeal, defendant seeks reversal of his convictions for theft, felon in possession of a firearm, unlawful use of a weapon, and recklessly endangering another person. In eleven assignments of error, defendant contends that the trial court erred in accepting his waiver of the right to counsel and subsequently denying his pretrial request for counsel, and he argues that the court erred in allowing the prosecutor's closing arguments. We conclude that the trial court did not err in accepting defendant's first waiver of counsel, but the trial court, ultimately, abused its discretion in failing to grant defendant's motion to reinstate counsel. Consequently, we reverse and remand. We therefore do not consider defendant's remaining nine assignments of error.

Trial was initially scheduled for December 13, 2022. On November 17, 2022, defendant filed a *pro se* motion for substitute counsel. At the hearing on that motion, the trial court denied the motion, reasoning that defendant did not "have a legitimate reason for her to withdraw." The next day, defendant's counsel filed her own motion to withdraw. However, on November 29, 2022, before the court ruled on that motion, defendant and his counsel dropped the request for substitute counsel, indicating they had reached an agreement. On the day of trial, an essential witness was unavailable, so defendant's counsel moved to postpone trial. The trial court granted defense counsel's request to postpone the trial until January 24, 2023.

On December 20, 2022, defendant filed a new *pro se* motion requesting new counsel before trial. A few days later, defendant's counsel also filed her own motion to withdraw. At the hearing on the *pro se* motion, the trial court stated that granting the motion would result in further postponement of trial, and defendant said that he did not want to postpone trial so agreed to continue representation with his current counsel. Thus, the trial court took no action on the *pro se* motion.

On January 24, 2023, the morning of the day the trial was scheduled to begin, defendant again filed a motion

for substitute counsel, expressing dissatisfaction with existing counsel and claiming that he had been denied new counsel twice. The court engaged defendant in a colloquy, reviewing the risks of self-representation, and explained that it was unwise for defendant to represent himself at trial.

"THE COURT:  As the judge, *** I am neutral, and I am not ethically allowed to help either side in a criminal case. If you choose to proceed without an attorney, you cannot look to the judge to provide you with legal advice or assistance. If you waive your right to be represented, you will be expected to handle all of these aspects of the case on your own. Do you understand what I've told you?

"THE DEFENDANT:  Yes, ma'am.

"* * * * *

"THE COURT:  I do note for the record that you have been taking notes of our conversation and the things that we have been discussing. You have been nodding when I've asked you questions and acknowledging what I have asked you or told you.

"* * * * *

"THE COURT:  I observe that you are thoughtful and that you have intelligently, voluntarily, and competently waived your right to counsel.

"THE DEFENDANT:  Yes, ma'am.

"* * * * *

"THE COURT:  So I wanted to go through that procedural history with you for a couple of reasons. One, it addresses the 60-day rule, which you seem fixated on. And number two, it addresses a lot of issues that are coming up next, which are whether you understand that proceeding without an attorney in a case of this seriousness, which could land you in prison for five years or longer, is like proceeding with—it's like trying to do your own surgery.

"A lawyer has an advanced degree, what we call a juris doctor, in the practice of law. And they have specialized knowledge. And [your current] attorney [has] been practicing law for over 25 years. Quite probably she's going to correct me and tell me it's longer. And you are seeking to do this yourself."

At this point in the proceeding, the trial court gave defendant the option to proceed with his current attorney or represent himself. Defendant agreed to proceed *pro se* and kept his counsel as a legal advisor. However, after defendant expressed hesitation about self-representation, the trial court and defendant engaged in a conversation about a third option—a new court-appointed counsel.

"THE COURT:   Are you requesting that I appoint a new attorney to represent you?

"THE DEFENDANT:   I will allow a new attorney to represent me if it's from another county.

"THE COURT:   I can't make any promises to you. The attorney I have available is from this county. So you—

"THE DEFENDANT:   I would like time to talk to this attorney who you believe would represent me better before making my decision.

"THE COURT: No, it's not—the decision about whether you want to represent yourself, be represented by [your current attorney]—

"THE DEFENDANT:   I would like to represent myself, Your Honor—

"THE COURT:   —or roll the dice and let me appoint a new attorney.

"THE DEFENDANT:   I would like to represent myself, Your Honor."

After defendant was presented with his three options—proceeding *pro se*, maintaining his current counsel, or obtaining different court-appointed counsel without interviewing them first, defendant stated, "I would like to represent myself." The trial court asked if he was sure, and defendant responded, "absolutely." As a result, the trial court found that he had chosen to represent himself at trial and had waived his right to an attorney intelligently, voluntarily, and competently.

The trial court denied defendant's request to postpone trial until May, and instead, it set trial for February 15, approximately three weeks away. The next day, the trial court issued an order granting defendant's *pro se* motion,

stating that defendant "acknowledged understanding [the court's] advice of rights," and he had expressed his "desire to represent himself."

A week later, defendant sent a letter to the trial court, asking for a hearing to request court-appointed counsel, because he could not "not make a sound argument on [his] own" due to the jail library's computer issues and lack of law books, and his computer illiteracy. At a hearing on February 8, 2023, one week before the scheduled trial date, the trial court heard the argument, and defendant further explained that he had been put into COVID quarantine, and the jail denied him access to the law library. The court denied the request for counsel, telling defendant "you don't know what you're doing, which I told you was the risk;" finding that defendant was "the problem" rather than his assigned counsel; and explaining that defendant had "both explicitly and implicitly waived [his] right to counsel, and that's the bed [he had]made." Defendant reiterated his request for court-appointed counsel. In a subsequent written order, the trial court denied defendant's request for counsel, explaining that he had "knowingly, intelligently and voluntarily waived his right to counsel" on a previous trial date and finding that his effort to withdraw the waiver was made "for the purpose of causing a delay in his jury trial."

On the first day of trial, on February 15, 2023, defendant again moved for appointment of counsel before the venire entered the courtroom, arguing that, because of COVID-19 restrictions on his access to legal resources in jail, he had not been able to prepare for trial. The trial court denied his request to appoint counsel and postpone trial, explaining that defendant had requested trial and had reported being ready for trial. The trial court explained that it had already delayed trial once—on the morning of January 24, after jurors had been called—to accommodate his choice regarding representation, and given the history of the case, it would not reconsider the motion to postpone, which would be necessary if counsel were appointed at that time.

FIRST ASSIGNMENT: JANUARY 24
PRETRIAL WAIVER OF COUNSEL

On appeal, defendant argues that the trial court erred in accepting his waiver of counsel on January 24 because he did not intentionally and unequivocally waive his right to counsel. Defendant contends that when looking at the totality of the circumstances—after the trial judge engaged defendant in a colloquy about the risks and disadvantages about self-representation—he did not evince a clear intent to represent himself. We disagree.

Under Article I, section 11, of the Oregon Constitution, a criminal defendant has a right to counsel and a right to self-representation. *State v. Meyrick*, 313 Or 125, 133-34, 831 P2d 666 (1992); *State v. Hightower*, 361 Or 412, 413, 393 P3d 224 (2017). The two rights are counterparts. *Hightower*, 361 Or at 416. If a trial court grants a motion to withdraw counsel and does not appoint substitute counsel, thus requiring the criminal defendant to proceed *pro se*, we review for error of law whether the defendant has knowingly and intentionally waived his or her right to counsel. *See id.* at 421; *see also Meyrick*, 313 Or at 133 (setting out legal standard for waiver analysis). "When the trial court's decision is predicated on a subsidiary question of law—for example, a legal conclusion about the scope of the right [to counsel or self-representation]—we review for legal error." *State v. Nyquist*, 293 Or App 502, 503, 427 P3d 1137 (2018). "A colloquy on the record between the court and the defendant wherein the court, in some fashion, explains the risks of self-representation is the preferred means of assuring that the defendant understands the risks of self-representation." *Meyrick*, 313 Or at 133. Whether a defendant validly waived his right to counsel must be reviewed in light of circumstances particular to the case. *Id.* at 132.

Here, the record indicates that the trial court followed proper protocols, including engaging defendant in a colloquy, reviewing the risks of self-representation—including the possibility of facing at least five years in prison—and advising defendant that it was unwise for him to represent himself at trial, because he was in a better position being represented by his current counsel who had over 25 years of legal experience.

*See id.*, 313 Or at 133 ("The more relevant information that a trial court provides to a defendant about * * * the dangers and disadvantages of self-representation, the more likely it will be that a defendant's decision to waive counsel is an intentional relinquishment or abandonment of a known right or privilege and that the record will so demonstrate."). The trial court explained to defendant his three options—proceeding *pro se*, maintaining his current counsel, or obtaining a new court-appointed counsel. And after the trial court's colloquy and questioning as to defendant's intention to represent himself, defendant said he "absolutely" intended to proceed *pro se*. The record supports the trial court's written order, granting defendant's *pro se* motion and stating that defendant understood the court's advice of rights and expressed a "desire to represent himself." We conclude that the trial court did not err in finding that defendant waived his right to an attorney knowingly and voluntarily.

### SECOND ASSIGNMENT: FEBRUARY 8 DENIAL OF REQUEST FOR COUNSEL

Next, defendant argues that, even if we conclude that the trial court properly allowed defendant to waive his right to counsel and represent himself, the trial court erred in denying defendant's request for counsel on February 8—the week before trial—because his waiver was not a permanent relinquishment of his right to counsel. In response, the state argues that the trial court's ruling was correct as supported by the record, which included findings that: (1) on January 24, defendant made an intentional and unequivocal request to proceed *pro se*; and (2) defendant's repeated requests for substitution of counsel, along with his vacillating requests to represent himself, were not made in good faith and were intended to delay the proceedings and avoid trial. The dispositive issue on appeal is whether the trial court erred in denying defendant's motion to reinvoke his right to counsel when defendant had been unexpectedly prevented from preparing for trial, because of COVID-19 restrictions, which prevented him from accessing the jail's law library, and due to his inability to use the materials in the law library because they were all computerized and he was computer illiterate.

As mentioned above, whether a trial court has denied a defendant's right to counsel, or the concomitant right to self-representation, is a question of law that we review for errors of law. *State v. Groff*, 306 Or App 40, 45, 472 P3d 812, *rev den*, 367 Or 387 (2020). However, in light of the "interests that are triggered by the commencement of trial, any invocation of the right to counsel or to self-representation that occurs after that time is subject to the court's discretion." *State v. Hightower*, 361 Or 412, 418, 393 P3d 224 (2017).

The Supreme Court has explained that we review for abuse of discretion a court's ruling on a defendant's motion regarding the right to counsel or self-representation that is made "well into the conduct of trial." *Id.* at 418. The court's emphasis on the fact that the abuse of discretion standard applies after "the commencement of trial" would seem to suggest that a different standard applies before the commencement of trial.

However, in a situation like this one, where, as the trial court reasoned, and we agree, the court's ruling on the defendant's request for counsel will necessarily have consequences for the timing of trial—where, if the defendant's request is granted, a continuance will be necessary—we believe that, based on the same trial-regulation-related concerns that the court articulated in *Hightower*, our review must likewise be for abuse of discretion.

The right to counsel and right to self-representation are "mutually exclusive," meaning that, by asserting the right to counsel, a defendant waives the right to self-representation and vice versa. *Id.* at 417. However, "that does not mean that, once the right to counsel or the right to self-representation has been invoked, the correlative right has been forever relinquished. Nothing prevents a defendant who has invoked the right to counsel or the right to self-representation from later waiving that right." *Id.*

Nevertheless, a person's ability to waive the right to counsel or self-representation is "not absolute and unqualified." *Id.* After the court determines on the record whether a defendant's decision about representation is a knowing and

voluntary one, "the court must further 'determine whether granting the defendant's request would disrupt the judicial process.'" *Groff*, 306 Or App at 45-46 (quoting *State v. Davis*, 110 Or App 358, 360, 822 P2d 736 (1991)).

A trial court may exercise its discretion to deny a motion for self-representation or to appoint counsel if "it has reason to conclude that granting the motion would result in disruption of proceedings." *Hightower*, 361 Or at 418. However, "the record must include some indication of how the trial court actually weighed the relevant competing interests involved for an appellate court to be able to determine whether the trial court abused its discretion" in ruling on the request. *Id.* at 421.

In this case, defendant sought to reinstate court-appointed counsel only a few days after agreeing to represent himself and again at a hearing one week before the new trial date, arguing, among other things, that he was unable to prepare for trial because he lacked access to the law library. Defendant contends that one week was sufficient time for his new counsel to prepare for trial, with the result that no delay would have been necessary. The state points to the fact that, during a prior hearing, the trial court had warned defendant that obtaining a substitute counsel 13 days before trial would delay the proceeding, so granting defendant's request one week before trial would have resulted in a delay to the proceedings. We agree with the state that, under the circumstances, the trial court could reasonably conclude that a delay would be necessary.

Nevertheless, given the particular circumstances surrounding the court's denial of defendant's request for counsel on February 8, we conclude that the court abused its discretion in rejecting it. After repeatedly expressing hesitation to represent himself, on January 24, defendant agreed that self-representation was the best of his three options (proceed with current counsel, who had moved to withdraw; be appointed new counsel; or represent himself) and requested 30 days to prepare. The court granted him 22 days, from January 24 to February 15. A few days later, defendant sent a letter to the court, alerting the court that, contrary to his reasonable expectation when he chose to

represent himself—he had expected the law library to have books available—in fact there were only computers available. In defendant's letter, he explained that that situation, combined with his computer illiteracy, prevented him from being able to prepare for trial. He also noted that, even if he had been able to use the law library's computers, they were not available because of computer issues. At a hearing two weeks later, he also explained to the court that he had been placed in COVID-19 quarantine and was not able to access the jail law library, and counsel (who was acting in an advisory role) confirmed that fact.

We understand the trial court's view to have been that, having chosen self-representation, defendant had created the difficult situation in which he found himself, and that is certainly true to some extent. But there is no indication in the record that, when defendant chose to proceed *pro se* with the understanding that he would have time and access to legal resources to prepare for trial, he had any reason to foresee that some of his preparation time would be spent in quarantine, and that when he did have access to the law library (to the extent that it was open despite its computer problems) he would find no books there. In short—multiple limitations prevented defendant from accessing legal resources, and nothing suggests that he had reason to anticipate that situation when he agreed to waive his right to counsel.

We do not disagree with the state and trial court that the court had an interest in ensuring an orderly and expeditious trial, and in determining whether the trial court abused its discretion we are bound by the court's finding that defendant's multiple changes of mind about his representation were intended to delay trial.[1] And generally, there are limits as to how many times a defendant can

---

[1] Although we consider the court's finding about defendant's motivation for requesting counsel, we disagree with the state that that finding, alone, can support the court's denial of defendant's request. The state does not argue that the trial court's ruling complied with the requirements of *State v. Langley*, 351 Or 652, 666, 273 P3d 901 (2012), for implied waivers of the right to counsel through conduct. Instead, it supports its argument with a citation to *State v. Spry*, 166 Or App 26, 999 P2d 485 (2000), which we find particularly unavailing in light of our observation in *State v. Guerrero*, 277 Or App 837, 852, 373 P3d 1127 (2016), that "[w]e understand our approach in those cases [including *Spry*] to be superseded by the Supreme Court's decision in *Langley*."

change their mind about waiving and reinvoking the right to counsel, especially when such motion is close to trial. However, up until the February 8 hearing, although there had been quite a bit of discussion about defendant's representation situation, defendant had actually waived or reinvoked his right to counsel only once—on January 24, when he decided to proceed *pro se* and waive his right to counsel. Shortly thereafter, defendant promptly presented legitimate reasons to reinvoke his right to counsel—restraints on his access to legal resources due to his computer illiteracy and being placed in COVID-19 quarantine.

We have stated before that "defense counsel must be given a reasonable amount of time to prepare for the defendant's trial." *State v. Ferraro*, 264 Or App 271, 281, 331 P3d 1086 (2014). "One of the boundaries established by law is that counsel must be given a reasonable amount of time to prepare for a hearing that could result in the deprivation of a liberty interest." *State ex rel Juv. Dept. v. Garcia*, 180 Or App 279, 286-87, 44 P3d 591 (2002). Similar concerns lead us to conclude that the trial court abused its discretion in summarily denying defendant's request for counsel under these particular circumstances. Defendant identified what appeared to be legitimate reasons for changing his mind about self-representation, but, rather than inquiring further, the court simply denied defendant's request for counsel. Under the circumstances, the court abused its discretion by failing to grant defendant's motion to reinstate counsel or take some other action to allow defendant time to obtain counsel or prepare for trial *pro se* with access to legal resources. *Cf. State v. Clardy*, 286 Or App 745, 766, 401 P3d 1188, *adh'd to as modified on recons*, 288 Or App 163, 406 P3d 219 (2017) (noting that we have denied requests for continuances to seek new counsel when the need for new counsel is "due to [the defendant's] own action or inaction" but granted them when the defendant's need for counsel outweighs any prejudice to the state).

Under these circumstances, we conclude that the trial court abused its discretion in rejecting defendant's request for counsel at the February 8 hearing, where defendant had only changed his legal representation status once

and where he had what appeared to be legitimate reasons to seek counsel the week before trial.

Reversed and remanded.